**FABERT MOTORS, INC., Plaintiff-Appellant,**

v.

**FORD MOTOR COMPANY, a corporation, Defendant-Appellee.**

**No. 15118.**

United States Court of Appeals
Seventh Circuit.

Jan. 28, 1966.

Rehearing Denied March 2, 1966.

John Alan Appleman, Urbana, Ill., Jean Appleman, P. Sveinbjorn Johnson, Chicago, Ill., Philip C. Zimmerly, Champaign, Ill., for appellant.

W. Donald McSweeney, William A. Montgomery, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., Richard B. Darragh, Robert W. Scott, Dearborn, Mich., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Fabert Motors, Inc., plaintiff-appellant herein, filed its complaint in two counts in the United States District Court to recover damages from Ford Motor Company, defendant-appellee, hereinafter called "Ford," for violation of the antitrust laws and the Automobile Dealers'

Franchise Act, Title 15 U.S.C. §§ 1221–1225, respectively.

The District Court granted Ford's motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, and this appeal followed.

The District Judge had before him the pleadings, the deposition testimony, answers to interrogatories, affidavits, a statement of uncontested facts, and a stipulation respecting documents. Most of this material has been presented to us in the appendices filed by appellant and appellee.

In the first count, plaintiff asserts that pursuant to a conspiracy to combine Edsel and Lincoln-Mercury dealerships, Ford coerced its Lincoln-Mercury dealers into accepting the competitive Edsel agencies or relinquishing their Lincoln-Mercury agencies. Plaintiff alleges that plaintiff did not wish to accept the Edsel agency and thus was forced to submit its resignation and economically coerced into signing a general release on pain of forfeiting certain payments for merchandise, equipment and rental of the dealership premises in which plaintiff had made large investments. These payments made by Ford to plaintiff over a period of seven months totalled in excess of $86,000. Plaintiff seeks to recover treble damages and attorneys' fees in the sum of $1,100,000.

The second count sets forth approximately the same facts and seeks damages of $300,000 under the Automobile Dealers' Franchise Act.

The plaintiff asserts that the general release, on which Ford relies, was secured through fraudulent concealment of the fact that Ford intended to discontinue manufacture of the Edsel. In its complaint, filed August 15, 1961, plaintiff offers for the first time to return the consideration received for the general release which was executed on or about October 2, 1959.

Negotiations concerning the resignation of the agency, release and payments were conducted over a lengthy period of some months and included several offers and counter-offers in the course of which there allegedly occurred two statements on which plaintiff bases its claim of coercion.

In February, 1959, about 8 months before the execution of the general release, Thomas A. Coward, Ford's Chicago District Sales Manager, during a visit to plaintiff's place of business in Champaign, Illinois, told Elwood Fabert, president, director and shareholder of plaintiff, that he had no choice in the matter of taking on the Edsel franchise because Ford could and would cancel him out. Mr. Fabert testified that he told Mr. Coward that he did not believe that Ford would cancel him out and asked for time to think it over. He testified further that, at this conversation or at the later conversation described below, Mr. Coward pointed out the special financial advantages which would accrue to plaintiff from resigning its agency rather than having it cancelled, in which latter case plaintiff would receive only what the agency contract required and nothing in addition to that.

The second conversation took place in June, 1959, about three months before the execution of the general release. At that time, Mr. Coward told Mr. Fabert that Ford wanted to have only one dealer handling both Lincoln-Mercury and Edsel by October 1, 1959, and that if plaintiff did not resign its agency, that agency would be cancelled. Mr. Coward wrote out by hand, a form of resignation, leaving blank spaces for insertion of figures.

After consulting with its attorney and after special meetings of the shareholders and directors of plaintiff (as recorded in minutes prepared by plaintiff's attorney) which are included in the record before us, plaintiff wrote Ford a letter of resignation dated July 2, 1959, using the terms suggested by Mr. Coward but inserting specific sums to be paid plaintiff for signs and tools plus $36,000 for rent on the premises and "benefits" under the original agency agreement. There were exchanges of correspondence and the parties agreed on a reduction of the figure of $36,000 to $24,000. This was still in

excess of the amount which Ford would have been obligated to pay under the terms of its contract if the agency were cancelled. Plaintiff asserts the contrary in its briefs, but in his deposition, Elwood Fabert said there was no market in which signs and special equipment could be sold. The contract called only for the fair market value to be paid on cancellation. The agreement also provides that upon termination by Ford, and in the event that the dealer so elects, Ford shall aid and assist the dealer in disposing of or leasing the dealership premises. However, Ford is not obligated to make any "rent" payments in the event that the dealer or anyone else occupies the premises for any purpose for a period of more than 90 days following the effective date of termination. In this case, plaintiff continued to occupy the premises and at the time of the general release had been engaged for almost a month in sales and service operations with reference to another make of automobile. The plaintiff was a lessee of the premises which were owned individually by Mr. and Mrs. Elwood L. Fabert.

Ford did combine its Lincoln-Mercury and Edsel agencies, appropriating about $5 million for financial assistance in liquidating dealerships. Eventually the program did prove unsuccessful and manufacture of the Edsel was discontinued with a further appropriation of nearly $1 million for settlement of discontinued Edsel franchises.

Plaintiff asserts that it would not have acted as it did had the short duration of the Edsel program been foreseen. It is stipulated, however, and that stipulation is supported by the uncontradicted record, that the decision to discontinue manufacture and sale of the Edsel was not made until November 18, 1959, some time after the general release was signed.

We agree with the District Judge that there was no genuine issue as to a material fact and that plaintiff's general release bars this action. The release was given for a substantial cash consideration. The allegedly coercive statements made months prior to the release constituted statements of fact known to plaintiff that Ford had certain legal rights under the contract between the parties and the announcement that Ford was disposed to assert those rights.

Plaintiff did not execute the initial release form proposed by Ford. Plaintiff's attorney revised that form by adding certain terms.

Plaintiff ratified the release by retaining some $62,000 already received from Ford and by accepting an additional $24,000 after signing the release. Plaintiff asserts that the sums received did not constitute consideration for its present claims but that in the event of a jury finding otherwise, these sums could be set-off against damages received by plaintiff if successful. Evidently a set-off against damages is the only type of tender plaintiff has in mind, as Mr. Elwood Fabert made clear when in the course of a deposition he was asked if he would return the sum of $24,000 and refused to do so unless paid the damages he sought.

■■■■ The plaintiff's allegations of fact do not support the conclusory charge that Ford conspired to violate the anti-trust law. Uncontested documentary evidence shows that Ford made an independent business decision free of anti-competitive purpose. A contract or combination is essential to a violation of the anti-trust laws. Weir v. Chicago Plastering Institute, 7 Cir., 1959, 272 F.2d 883, 887.

■■■■ But in any event, the release discharged all claims with certain specific exceptions which do not concern us here. It was a general release covering the claims set out in the complaint. Duffy Theatres v. Griffith Consol. Theatres, 10 Cir., 1953, 208 F.2d 316, 323–324 and cases there cited, cert. den. 347 U.S. 935, 74 S.Ct. 629, 98 L.Ed. 1085; Clarke Baridon, Inc. v. Merritt-Chapman & Scott Corp., 4 Cir., 1962, 311 F.2d 389, 394. Nor was this release contrary to public policy. Duffy v. Griffith, supra, 208 F.2d p. 324. Plaintiff was not un-

lawfully coerced into releasing its claims. Plaintiff was represented by counsel and executed this instrument only after due deliberation with knowledge of the pertinent facts. Alloy Products Corp. v. U. S., 1962, 302 F.2d 528, 530, 157 Ct.Cl. 376. Economic coercion is not established by showing that the release was given under pressure of financial circumstances under threat of Ford's having recourse to an action Ford was legally entitled to take. Kohen v. H. S. Crocker Co., 5 Cir., 1958, 260 F.2d 790, 792.

We have carefully considered all points and authorities to which our attention has been invited, but find in them no basis for disturbing the action of the District Court.

The judgment of the District Court is affirmed.

Affirmed.