KENDALL ELEVATOR CO., INC.,
Plaintiff,

v.

LBC&W ASSOCIATES OF SOUTH CAR-
OLINA, INC., Defendant.

Civ. A. No. 72–193.

United States District Court,
D. South Carolina.

Oct. 3, 1972.

Stanley H. Kohn, Columbia, S. C., for plaintiff.

Gene R. Ellison, Robert G. Currin, Jr., Columbia, S. C., for defendant.

CHAPMAN, District Judge.

This matter is before the Court upon motion of the defendants for summary judgment. Under Rule 56 F.R.C. P., summary judgment may be granted where there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law.

The plaintiff is a South Carolina corporation engaged in the sale, construction, erection, repair and maintenance of elevators, but said plaintiff is not a manufacturer of elevators or the component parts thereof. The defendant is a South Carolina corporation engaged in designing, planning and engineering buildings and structures and in connection with its architectural services it prepares written specifications which must be followed by contractors and subcontractors in the erection of the buildings and structures.

The plaintiff alleges that commencing in 1969 the defendant has placed certain restrictive conditions in the specifications for certain buildings that limit the elevator supplier or contractor to companies which "shall be the manufacturer of the major components" of the elevator and/or requiring that the elevator equipment be manufactured by Otis Elevator Company or equal to equipment manufactured by Otis Elevator Company. The plaintiff contends that these restrictions and limitations placed upon elevator contractors were designed and calculated by the defendant to foreclose the competition among bidders on various projects and to deny the plaintiff freedom of access to consumers, thereby hindering competition and the free flow of goods in interstate commerce and therefore violate certain of the antitrust laws, particularly 15 U.S.C. § 1.

Interrogatories have been answered by both parties and depositions have been taken of the president of the plaintiff corporation and executive vice-president of the defendant corporation and a motion for summary judgment is based upon the information developed therein.

The plaintiff corporation was organized in 1968 and purchases from Esco Elevator Company, a Texas corporation, all the major parts used by it in the construction, erection, repair and maintenance of elevators. The plaintiff operates primarily in the State of South Carolina, but does have the right under its agreement with Esco to sell in the Augusta, Georgia area.

From 1969 through March 1972 the defendant wrote elevator specifications for 20 jobs in the State of South Carolina. On seven of these projects the specifications restricted the installation of elevators to the manufacturer of the major component parts thereof. One of these projects was a 13 story apartment building and the record shows that the plaintiff did not bid on jobs for buildings more than 8 stories high. The plaintiff's basic contention is that it was prevented from bidding on the six remaining jobs which contained the restrictive specifications on the elevator installer.

Although the plaintiff alleges in its complaint and asserts in the deposition of its president that there is some contract, agreement, arrangement or conspiracy between the defendant and Otis Elevator Company or other elevator manufacturers which unreasonably and unlawfully restrained the plaintiff from dealing in the open market, Mr. Kendall has offered no proof of this contention and has further indicated that he has no knowledge of such an arrangement, but he admits he had concluded that there must be some such agreement or arrangement since Otis Elevator Company drew certain elevator specifications for

the defendant. However, in Mr. Kendall's deposition he admitted that he did not know whether Otis Elevator Company drew up any such specifications, he further admitted that he had no evidence which would tend to prove any arrangement between the defendant and Otis or any other elevator manufacturer, and he knew of no one who had any knowledge of such an arrangement. Kendall admitted that it was common practice for elevator manufacturers to write suggested specifications and submit them to architects and that he (Kendall) had done so on occasion and had once been asked by the defendant to help in preparing the specifications and plans for lifts on a particular job.

In answers to interrogatories the plaintiff was unable to name any individual or identify any person having knowledge of any arrangement, understanding, contract or agreement which plaintiff alleged to exist between the defendant and any other person or firm regarding installation of elevators. In the interrogatories the plaintiff could not describe the so-called "arrangement" and stated that it "was obvious from defendant's reliance on and use and specifications of Otis Elevator Company's products by brand name."

The record shows that all of the specifications used by the defendant on the jobs in question contained an "or equal" clause in all specifications. This clause is included in the general or special supplementary conditions and applies to each section of the specifications. The "or equal" clause provides, in essence, as follows:

"Notwithstanding any reference in these specifications to any article, device, product, material, fixture, form or type of construction by name, make, or catalog number, such references shall be interpreted as establishing a standard of quality and shall not be construed as limiting competition; and the contractor, in such cases, may at his option use any article, device, product, material, fixture, form, or other type of construction which in the judgment of the architect expressed in writing is equal to that specified."

The "or equal" clause has been construed as not precluding others from bidding and is widely used in construction specifications. See the New Jersey decision of Fisher v. Borough of Longport, 53 A.2d 210 (1947) where the specifications provided:

"1. Work to be Done: The work to be done includes the construction of a Gravel Filter well unit, Layne type or equal, complete with pumping equipment and auxiliary engine drive having a guaranteed minimum capacity of not less than 700 GPM against a surface pressure of not in excess of 25 feet, all as hereinafter specified: * * *."

In protecting these specifications against the charge by three citizens that all but Layne were precluded from bidding the Court stated:

"It would seem that a careful reading of the above quoted portion of the specifications does not preclude competitive bidding so as to bar any bid except that of the defendant Layne-New York Company, Inc. Albeit the specifications call for a 'Layne type' gravel filter well unit; provision is therein made for other types of equipment by the use of the words 'or equal'. To hold otherwise would be to do violence to plain and simple English."

The "or equal" clause in defendant's specifications is much broader and protects the rights of contractors and subcontractors to use optional products equal to those specified.

In spite of the fact that plaintiff contends that there is some arrangement between defendant and Otis Elevator Company, the plaintiff's president admitted that other elevator companies supplied elevators for projects designed by defendant. The record further shows that Otis Elevator Company, Westinghouse Electric, Elevator Division, Dover

Corporation, Southern Elevator Company and Esco Elevators, Inc. all furnished elevators for different projects designed by defendant. On such projects the plaintiff installed the Esco Elevators and the other elevators were installed by the manufacturer thereof.

There is no allegation of price fixing on the part of defendant and no allegation of intent to monopolize. The plaintiff must therefore attempt to come under that part of 15 U.S.C. § 1 (Sherman Antitrust Act) which provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

■ The plaintiff has failed to prove a contract, combination or conspiracy in restraint of trade, and it is obvious from plaintiff's answers to interrogatories and the deposition of plaintiff's president that plaintiff has no way of proving any type of contract, agreement or conspiracy and plaintiff has no present information to indicate that he can ever offer any testimony or evidence to support this claim. A contract or combination is essential to a violation of the antitrust laws. Fabert Motors, Inc. v. Ford Motor Company, 355 F.2d 888 (7th Cir. 1966).

■ It is well established that a corporation cannot conspire with its officers, employees and agents in restraint of trade within the meaning of the Sherman Act. Cliff Food Stores, Inc. v. Kroger, Inc., 417 F.2d 203 (5th Cir. 1969). It takes two persons or entities to constitute a conspiracy and a corporation cannot conspire with itself. Since the officers, employees and agents of the corporation are considered a part of the corporation and their acts are the acts of the corporation, there can be no intra-corporate conspiracy.

■ There are allegations in the complaint by which the plaintiff charges the defendant with unlawfully refusing to deal or do business with it. As a general rule, a unilateral refusal to do business does not violate the antitrust laws so long as there is no purpose to create or maintain a monopoly. United States v. Colgate and Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). The plaintiff has not claimed that defendant was attempting to create or maintain a monopoly. As pointed out in Carbon Steel Products Corp. v. Alan Wood Steel Co., 289 F.Supp. 584 (S.D.N.Y.1968):

"Absent such monopolization, a party claiming an unlawful refusal to deal must rely on Section 1 of the Sherman Act, 26 Stat. 209 (1890), as amended, 15 U.S.C. § 1 (1964). For there to be a violation of Section 1, there must be some form of joint action, a 'contract, combination * * * or conspiracy,' as well as an undue restraint of trade. House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867, 870 (2nd Cir. 1962). Though there is occasionally dispute over the degree of restraint imposed by a purportedly unilateral refusal to deal, see Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (U.S. March 4, 1968) (dissenting opinion), more often the point of contention is whether any form of joint action can be found in the dealer's practices."

In the present case the plaintiff has not been able to show any such joint action and admits that he presently has no idea that he will ever be able to offer evidence to prove joint action.

■ The manufacturer of a product may select his customers and has the right to refuse to deal with anyone so long as such refusal is not in furtherance of a restrictive trade practice. An architect certainly has the same right.

This record shows that the defendant architects' actions and recommendations were always subject to approval by the owner of the project. An architect is hired to design and plan the erection of a building and in so doing he advises the owner as to what materials and equipment should be used. The architect has an obligation to his client to recommend products of proven quality and perform-

ance. The owner is not required to accept all of the advice of the architect and may change specifications as he desires.

 It is common knowledge that an elevator is a complicated piece of equipment and unless properly manufactured, installed and maintained, it can create many problems. The defendant's vice-president pointed out that the reason for requiring the elevator installer to also be the manufacturer is to obtain quality and a single responsibility for the entire unit. Also companies that manufacture the elevators usually have larger financial resources, factory trained personnel and prompt service from a single source. The Court does not find this requirement to be unreasonable, in fact, the United States Department of Housing and Urban Development requires the same type of specification for elevators in projects controlled or sponsored by that governmental agency. An architect must use his education, judgment and experience in advising his client and preparing specifications for the client's building. It is not unreasonable for the architect on certain projects to specify that the elevator supplier or contractor must be a company which is the manufacturer of the major component parts of the elevator.

The record shows that plaintiff has been in business only three years and has only five regular employees in addition to the company president's wife, who works part-time. Until plaintiff's reputation in the trade is better established and its financial resources and work force are larger, it is quite natural that architects in planning large projects may wish to deal with manufacturers of elevators rather than installers.

There being no dispute as to any material fact and it being obvious and defendant has not violated the antitrust law, defendant is entitled to a summary judgment and the complaint must be dismissed.

And it is so ordered.