RICHARD'S LUMBER AND SUPPLY COMPANY, Individually, and Richard's Lumber and Supply Company, as representatives of a class, Plaintiffs-Appellants,

v.

UNITED STATES GYPSUM COMPANY et al., Defendants-Appellees.

No. 76–1245.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1976.

Decided Sept. 20, 1976.[1]

Rehearing and Rehearing En Banc Denied Oct. 14, 1976.

Certiorari Denied by Supreme Court March 7, 1977.
See 97 S.Ct. 1326.

portions of that order germane to the issue of the effect of the covenant not to sue relied upon by United States Gypsum Company. Certain changes in form but none of substance have been made in the portions published. The rest of the order remains subject to Circuit Rule 35.

John Bernard Cashion, Chicago, Ill., for plaintiffs-appellants.

James G. Hiering, Frederic J. Artwick, Chicago, Ill., for defendants-appellees.

Before PELL, TONE and BAUER, Circuit Judges.

PER CURIAM.

The gist of the antitrust violation charged in this private treble-damage action is that a gypsum wallboard manufacturer induced the specification of its wallboard in residential construction projects by granting rebates to the developers of the projects. Plaintiff is a retail building materials dealer which sold wallboard to drywall contractors, who installed it in construction projects. The defendants, in addition to the wallboard manufacturer, are developers of construction projects who received rebates. We affirm the District Court's judgment in favor of the defendants.

Plaintiff is Richard's Lumber and Supply Company, an Illinois retail dealer in building supplies. It brings this action against United States Gypsum Company (USG), which manufactures gypsum wallboard used in home construction, Kaufman and Broad, Inc. (K & B), which engages in the construction and sale of residential housing, and two K & B subsidiaries which carry on construction activities in Illinois. Plaintiff's allegations are in substance as follows: Gypsum wallboard is a homogeneous product which does not vary from manufacturer to manufacturer. From 1968 through 1972 there existed an arrangement between USG and K & B whereby K & B received a rebate, or "corporate discount" (calculated on a sliding scale, as a percentage of the price paid for USG board), on USG gypsum wallboard purchased for use in its developments.[2] The purchasers of the board were drywall contractors engaged by the K & B subsidiaries. The contractors purchased the board from plaintiff and other building materials dealers. To ensure the maximum possible usage of USG board in their projects, K & B subsidiaries were told by the parent to specify USG board to their drywall contractors, and USG sales representatives reported monthly to each subsidiary (which cross-checked their figures) and to K & B on the amount of USG wallboard that had been purchased for use in K & B

---

2. Richard's also alleged that USG guaranteed and thus made possible a $200,000 loan to K & B and maintained compensating balances in at least two banks for the benefit of K & B as part of the consideration for entering into the agreement.

developments. Each month USG paid the rebate to the parent. It is alleged that this arrangement between what plaintiff describes as the country's largest manufacturer of gypsum wallboard and the country's largest home-builder constituted illegal price-fixing.[3] Richard's adds in its second amended complaint that the existence of this rebate plan "compelled" it to sell only USG wallboard to contractors working for K & B subsidiaries (except when USG supplies became scarce) and thus forced it to buy the more expensive USG products. Richard's also alleges that the agreement produced artificially high prices for USG board. All this, it is alleged, damaged Richard's in the sum of $20,000.

The District Court granted USG's motion for summary judgment, holding that plaintiff's action against USG was barred by a covenant not to sue executed on behalf of a class of which plaintiff was a member in consideration of the settlement of a prior antitrust class action against USG and other gypsum manufacturers. (The court also entered judgment in favor of the other defendants. Only the United States Gypsum judgment is dealt with in this opinion. See note 1, *supra*.)

In *In re Gypsum Cases*, 386 F.Supp. 959 (N.D.Cal.1974), USG was a defendant in a complex class antitrust action, in which it and several other manufacturers of gypsum wallboard were charged with a conspiracy to fix prices. In 1973, under the supervision of the district court, a settlement agreement was reached in which the defendants paid $67,640,000 (with USG paying the major portion of it) in return for the following agreement not to sue, executed on behalf of the various plaintiff classes:

"each plaintiff and intervenor, and each class member which does not elect to be excluded as herein provided, shall be deemed to have covenanted to refrain from proceeding against the settling defendants, or any of them, on any present or prospective claim pertaining to any building and construction products manu-

factured from gypsum, including any gypsum or related products and relating to any direct or indirect purchases or transactions occurring prior to the dates of the settlement agreements, which agreements are dated in the period July 10 to August 15, 1973, and which claims are asserted under Federal or State antitrust law or based on any allegations of collusion, conspiracy or similar assertions."

Notice of the proposed settlement, including a listing of the various claims of the plaintiffs and the covenant not to sue quoted above, was sent to all members of the plaintiff classes, which included Richard's (which was a member of a class of wallboard dealers). Richard's admits that the notice was received and that it did not take the opportunity provided either to opt out or to object to the fairness of the proposed settlement. When the fund was established, Richard's participated in it.

Richard's admits that it was a member of the plaintiff class in *In re Gypsum Cases*; we do not understand it to be attacking either the propriety of the notification procedures used or the adequacy of the representation of its class in the prior action. Rather, Richard's claims that the language of the covenant not to sue cannot be construed to include, as on its face it clearly does include, the antitrust claim asserted herein, which is based on USG's allegedly illegal conduct from 1968 through 1972.

■ A general release, or a broad covenant not to sue, is not ordinarily contrary to public policy simply because it involves antitrust claims. Thus, in the absence of proof that it was the product of duress, such a release is fully enforceable. *Fabert Motors, Inc. v. Ford Motor Co.*, 355 F.2d 888 (7th Cir. 1966); *Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975). There is no claim of duress here. Richard's was represented in the California litigation by the attorney appointed to represent its class and was advised in Illinois by its own attorney; it was given all the pertinent

---

**3.** Plaintiff also alleged that the arrangement constituted a tying arrangement and an at-

tempt to monopolize, but these theories have been abandoned.

facts about the settlement in the class notice, including the text of the proposed covenant not to sue, and it was well aware of its additional antitrust claim against USG (which had already been filed in Illinois); Richard's had sufficient time to consider the settlement proposal and the options presented to it by the court; and, finally, Richard's interests received additional protection through judicial supervision of the settlement. See *Fabert Motors, Inc. v. Ford Motor Co., supra,* 355 F.2d at 890–891.

Despite the fact that the covenant is clear and unconditional and was not extorted by unfair means, Richard's argues that its due process rights would be violated if the covenant were applied to bar the instant action against USG. Under Richard's view, the covenant cannot constitutionally be interpreted to bar any claims except those which would have been barred in any event by the res judicata effect of the dismissal of the action with prejudice. We find this contention to be without merit.

In a class action settlement, due process requirements are satisfied when notice has been given to the individual members of the class and the standards of adequate representation have been met. *Research Corp v. Edward J. Funk & Sons Co.,* 15 F.R.Serv.2d 580 (N.D.Ind.1971); *Rivera v. Chicken Delight, Inc.,* 17 F.R.Serv.2d 473 (S.D.Tex.1973). Richard's does not attack the settlement on these grounds, nor does it suggest any concrete reason why a novel interpretation of the covenant not to sue is necessary for the protection of absent parties. *Cf. Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

Therefore, we hold that USG's motion for summary judgment was properly granted.

Affirmed.