**William E. COESTER, an Individual, d/b/a Coester Distributing Company, d/b/a Hamm's Beer Distributing Company, Plaintiff,**

v.

**H.H.B. COMPANY, a Minnesota Corporation, a/k/a Theodore Hamm Company, a corporation, a/k/a the Theodore Hamm Brewing Company, a corporation, Defendant.**

No. CIV. 74–1014.

United States District Court, D. South Dakota, N. D.

March 20, 1978.

374

George J. Rice, Aberdeen, S. D., and Aurelio P. Nardi, St. Paul, Minn., for plaintiff.

Dennis Maloney, of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, S. D., and Richard E. Aretz, of Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for defendant.

1. Theo. Hamm Brewing Co. is the predecessor in interest to the named defendant, H.H.B. Company. Subsequently, H.H.B. Company sold the brewing operation involved in this matter to Brewers Unlimited, Inc., who in turn sold the brewing operation to Olympia Brewing Company.

2. The relevant terms of the agreement provide as follows:

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This matter is before the court on defendant's motion to dismiss. That motion is predicated on two grounds. First, defendant contends that plaintiff executed a full and final release of all claims or demands or causes of actions against the defendant on June 28, 1971, which fully bars this pending antitrust action. Second, defendant argues that this matter should be deemed abandoned by the plaintiff's failure to faithfully and reasonably prosecute.

Because defendant's motion to dismiss and plaintiff's response to that motion were accompanied with supporting affidavits, the Court notified counsel that it intended to treat the motion as a motion for summary judgment. The Court then provided each side with an additional opportunity to submit material or argument that they desired the Court to consider in ruling on the motion.

Plaintiff's allegations of Clayton Act and Sherman Act antitrust·violations arise out of a business relationship between the parties that existed for an eight year period during the sixties and early seventies. Plaintiff, William E. Coester, was the owner and operator of Coester Distributing Company, which was the authorized distributor and wholesaler for the Theo. Hamm Brewing Company.[1]

This wholesale beer distributorship was established under an agreement entitled "Declaration of Terms" on February 4, 1963. On January 23, 1967, a new, identical agreement was signed by the parties. The agreement expressly recognized that the distributorship was terminable at will and that the wholesaler was not entitled to an exclusive territory.[2]

4. Buyer is not an agent of Seller for any purpose. The relationship between the parties is exclusively that of Buyer and Seller, and may be terminated by either party at any time without cause and without notice. . . . Buyer acknowledges that Seller has granted no franchise or exclusive territory to Buyer, and Seller may at any time without incurring any liability to Buyer, sell its products to others in the same trade area as Buyer. Under no circumstances

After numerous years of this working relationship, differences developed between the parties. Plaintiff claims that the problems stemmed from the plaintiff's decision to stock other brands of beer besides Hamm's. Regardless of the reasons, the differences between the parties eventually reached the point where it was defendant's desire to terminate the business arrangement. Initially, defendant encouraged plaintiff to accept purchase offers that were being made by local businessmen. When plaintiff continued to refuse such offers, defendant began to negotiate directly with the plaintiff for a termination of the distributorship. Finally, the parties reached a "Termination of Business Agreement."

In view of the fact that the distributorship was terminable at will, it is apparent that the major aspect of the termination agreement was the matter of defendant obtaining a full and final release from the plaintiff.[3] Such a release is clearly provided for in the agreement. The agreement provides:

> Wholesaler, as a corporation and an individual, hereby releases Hamm's from all sums of money, actions, suits, proceedings, claims and demands whatsoever which either of them at any time had or has up to the date of this Agreement against Hamm's, its personnel, affiliates or subsidiaries. Each of them will not commence, maintain, prosecute or aid any action at law or proceeding in equity or any legal proceeding whatsoever or any claim for damages or relief against Hamm's based in whole or in part upon any act or omission or any thing at any time up to and including the date of this agreement . . .

The termination agreement was executed on June 28, 1971. Plaintiff, who is presently practicing law in the state of South Dakota, was 32 years old at that time. Also, before signing the termination agreement plaintiff was advised and assisted by counsel. There is no claim that either plaintiff was forced to sign the agreement or that he signed the agreement as the result of any false representations by the defendant.

At the time that the termination agreement was executed, plaintiff was present along with a representative of the defendant company. In addition, Mrs. Frances Coester, mother of the plaintiff, participated in the meeting. She along with her husband had been the previous owners and operators of the beer distributorship. The plaintiff had succeeded them in that position. More importantly however, she was the owner of the building which housed the distributorship operation. Plaintiff leased the building from his mother and had 12 years remaining on the $450-a-month lease.

Under the terms of the termination agreement, plaintiff agreed to the previously mentioned release in exchange for certain concessions by the defendant. Defendant agreed to purchase all of the then existing inventory of Hamm's beer held by

---

shall Seller be liable for any loss of profits by Buyer or for any part of Buyer's advertising, sales promotion, organization, business investment, operating or other expenses, whether of the same or a different nature; and Buyer hereby releases Seller from any and all such liability.

3. In addition, defendant's pursuit of a written termination settlement with the plaintiff when the parties were operating under a terminable at will contract is likely the result of a recognition of the import of *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.,* 395 F.2d 388 (8th Cir.1968). There the Eighth Circuit Court of Appeals stated:

We feel that under Minnesota law where an exclusive franchise dealer under an implied contract, terminable on notice, has at the instance of a manufacturer or supplier invested his resources and credit in establishment of a costly distribution facility *for the supplier's* product, and the supplier thereafter unreasonably terminates the contract and dealership without giving the dealer an opportunity to recoup his investment, a claim may be stated. *Clausen & Sons, Inc., supra,* at 391.

Unlike that case, however, here the parties were operating under a written agreement which specifically provided that no exclusive territory be granted. Moreover, the distributor was not prohibited from selling competing brands which meant that his continued operation and existing capital investment were not as totally dependent as *Clausen & Sons, supra,* upon a continuation of the business relationship with the defendant.

plaintiff. This repurchase was agreed to not at the price at which plaintiff purchased the beer from defendant but rather at the price which plaintiff charged in re-selling the beer to retail customers.[4] Nowhere in the declaration of terms under which the parties were operating was there any requirement that Hamm's repurchase any inventory of the distributing company.

Of even greater consequence, defendant agreed to pay the First National Bank of Aberdeen $44,164.10 which was in full satisfaction of the real estate mortgage on Mrs. Frances Coester's warehouse building that was being leased by plaintiff's distributorship.[5] Again, there was no previous contractual provision obligating defendant to make such a payment.

Defendant performed all of its obligations under the "Termination of Business Agreement" including the payment in satisfaction of the mortgage on the building, the repurchase of the beer inventory and the refund of certain deposits of the plaintiff that were being held by the defendant.

Plaintiff contends that the release contained in the termination agreement does not represent a bar to this antitrust action. He premises this contention on three separate grounds. First, he argues that consideration passing to him is a prerequisite to a valid release and that such consideration is absent here. Second, he claims that the release is ineffective here because he did not intend that the termination agreement constitute such a broad release. Finally, he

proposes that the Court not give effect to the release because it was the result of considerable economic duress which was administered by the defendant company. I do not agree.

■ At the outset, it should be mentioned that the "Termination of Business Agreement" provided that the instrument shall be governed by Minnesota law. This Court, however, is not bound by that provision. This controversy, and the interpretation of the release, involves the application of congressional antitrust legislation. In this regard, since a congressional statutory scheme is involved, this federal court is competent to interpret the release without regard to state law. *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 889 (3rd Cir.1975). Of course, this Court is also free to apply the applicable state rule of law. *Three Rivers Motors Co., supra.* This choice of law is not critical here, however, as it is the belief of this Court that under either the Federal common law or Minnesota law the release signed by the parties is a full and complete bar to this antitrust action.

■ To give full effect and force to the release of antitrust claims is not against public policy. *Schott Enterprises, Inc. v. Pepsico, Inc.*, 520 F.2d 1298, 1299 (6th Cir. 1975); *Virginia Impression Prod. Co. v. SCM Corp.*, 448 F.2d 262 (4th Cir.1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972); *Suckow Borax Mines Consol., Inc. v. Borax Consol. Ltd.*, 185 F.2d

---

4. The specific provision reads as follows:
   2. Hamm's will cause to be purchased the entire inventory of Hamm's products owned and in the warehouse of wholesaler, at the price Wholesaler sells to retail customers ("Price"), which price and amount shall be determined as of closing.

5. The specific provision reads as follows. It should be noted that the contract contained certain language which was deleted by the parties. This was accomplished by drawing a line through the undesirable language and having the parties initial that deletion. The following quoted material contains the only two such deletions existing in the agreement:
   5. At the closing hereof, ~~at the request of Wholesaler,~~ W.E.C. H.G.W. Hamm's will cause a check to be issued and paid to the First

National Bank of Aberdeen ("Bank"), in the sum of Forty-four thousand, one-hundred and sixty-four dollars and ten cents ($44,164.10), which shall be in full payment for ~~and in full consideration for the cancellation and termination of the Wholesaler's Declaration of Terms, license, franchise, relationship and arrangement. The parties hereto acknowledge~~ W.E.C. H.G.W. the outstanding mortgage held by said Bank, with the obligor being Mrs. F. Coester, and such payment shall satisfy such outstanding mortgage. On or immediately after closing, said Bank shall record in the Land Records for the area in which such property sits and then deliver to Mrs. F. Coester a full satisfaction of mortgage or other document evidencing satisfaction of such obligation.

196 (9th Cir.1950); *Famous Foods, Inc. v. General Foods Corp.,* 399 F.Supp. 705 (W.D. Pa.1972), aff'd 3 Cir., 538 F.2d 319 (1976); and *Green v. Aerosol Research Company,* 286 F.Supp. 627 (N.D.Ill.1968). These releases in no way dilute the government's remedies against the antitrust violators. The conclusion of the court in *Richard's Lumber & Supply v. U.S. Gypsum Co.,* 545 F.2d 18, 20 (7th Cir.1976), *cert. denied* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 593 (1977), correctly states the law in this regard:

> A general release, or a broad covenant not to sue, is not ordinarily contrary to public policy simply because it involves antitrust claims. Thus, in the absence of proof that it was the product of duress, such a release is fully enforceable. *Fabert Motors, Inc. v. Ford Motor Co.,* 355 F.2d 888 (7th Cir.1966); *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885 (3rd Cir.1975).

The Eighth Circuit Court of Appeals has similarly recognized the validity of releases in antitrust litigation. *Oskey Gasoline & Oil Co., Inc. v. Continental Oil,* 534 F.2d 1281 (8th Cir.1976).[6]

Releases, generally, have been enforced by the courts in their continued respect for the sanctity of contracts entered into fairly between consenting, knowledgeable parties. Courts have always been reluctant to intervene in these situations to strike down a mutually-agreed-upon resolution of a dispute. As the court noted in *Jeffries v. Gillitzer,* 302 Minn. 402, 225 N.W.2d 17, 20 (1975), "When parties intend that their differences be terminated, the law must provide them with complete assurance that the matter is final."

Plaintiff argues that the release he signed is invalid in that the "Termination of Business Agreement" was not supported by adequate consideration. He contends that no consideration passed personally to him. In this regard, he considers the $44,164.10 real estate mortgage paid by the defendant to his mother as merely satisfaction of a

"moral obligation." This Court considers this whole line of argument untenable.

■ Plaintiff's argument ignores the fact that under the termination agreement, defendant agreed to purchase all of plaintiff's existing inventory at plaintiff's sales price. Defendant agreed to do that even though he was not obligated to do so under the operable "Declaration of Terms" agreement. This alone is adequate consideration to support the agreement. Although the amount involved in this part of the agreement is not great that fact alone is not determinative. It has been held that an underestimate of damages resulting in a claim of inadequate consideration to support a release is not by itself a ground for setting aside the release. *Young v. Robertshaw Controls Co.,* 430 F.Supp. 1265, 1269 (E.D.Pa.1977). This circuit is in accord with that rule. In *Hutcheson v. Frito-Lay, Inc.,* 315 F.2d 818, 822 (8th Cir.1963), the Eighth Circuit Court of Appeals noted that "the general rule" is "that inadequacy of consideration alone is not sufficient to vitiate a release."

This agreement to purchase plaintiff's inventory is not the only consideration that passed to the plaintiff. As previously mentioned, under the termination agreement defendant also agreed to satisfy a $44,164.10 real estate mortgage on Mrs. Coester's warehouse. In recognition of this term in the agreement there is no question about the adequacy of the consideration. Plaintiff, however, attempts to ignore this term by first arguing that the mortgage satisfaction represented merely a "moral obligation" owed to plaintiff's family for their long association with defendant company. Plaintiff goes on to assert that the benefit of this $44,164.10 payment passed exclusively to his mother, a separate economic entity. That argument ignores both the reality of the bargaining process involved in the termination agreement as well as the relationship between plaintiff and his mother.

---

**6.** For a list of additional cases upholding the validity of releases in antitrust litigation see footnote 27 in *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 896 (3rd Cir.1975).

Both the affidavit of plaintiff and the affidavit of his mother concede that the defendant first offered to take over the rent obligations of the plaintiff under the lease with his mother. Plaintiff and his mother, however, preferred a lump-sum payment which would be sufficient to satisfy the outstanding mortgage and free up the property for other rental. This counterproposal was communicated to defendant by the plaintiff, and after some negotiations it was agreed to by all the parties. Mrs. Frances B. Coester states in her affidavit that she inquired into whether or not she was then free to rent the building and keep the proceeds. The defendant acknowledged that she could do so and told that fact to the plaintiff. The practical effect of the agreement was to relieve plaintiff's obligations under the lease while also insuring the solvency of plaintiff's family's investment in the building. The Court believes that the release was negotiated with those purposes in mind. All these facts clearly indicate that consideration did pass to the plaintiff by defendant's satisfaction of the mortgage.

■ Even assuming, arguendo, that plaintiff's contention that the consideration did not pass directly to him has merit, this does not invalidate the release for lack of consideration. Minnesota courts have long recognized that it is not necessary that the consideration be paid directly to the contracting party in order for a release to be valid. *Hanson v. Northern States Power Co.*, 198 Minn. 24, 268 N.W. 642, 643 (1936). See also *Clausen & Sons, Inc., supra,* at 390. Here, the release compromised a bona fide dispute concerning the duties and obligations of the parties under the subsisting contract. It is therefore supported by valid consideration and is enforceable. *Anderson v. Ciba-Geigy Corp.,* 490 F.2d 438 (8th Cir. 1974).

■ Plaintiff's second contention is that he did not intend the agreement to be a release of this claim and his subjective intent therefore presents a jury question which precludes summary judgment. He is incorrect. In negotiating the release, the parties dealt at arms' length. Plaintiff was represented by counsel at all important times during the negotiation. Moreover, plaintiff was permitted to change language in the written contract of which he did not approve, and this was done. There is no evidence of any bad faith dealings by the defendant. In fact, plaintiff does not seek to avoid the release on the basis of any allegations of fraud or misrepresentations. In light of this, and in view of the fact that the contract is unambiguous and clear, plaintiff will not be permitted to set aside the bargained-for release on the basis of his unsupported and bald assertion that he was mistaken as to the effect of the release. Lack of knowledge as to the effect of the release is not sufficient to modify clear and unambiguous terms of a written contract. *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 894 (3rd Cir.1975).

■ In order to set aside a release on the basis of mistake, the mistake must be mutual. Unilateral mistake is not enough. *DeHart v. Richfield Oil Corp.,* 395 F.2d 345, 348 (9th Cir.1968); *Virginia Impression Products Co. v. SCM Corporation,* 448 F.2d 262 (4th Cir.1971), *cert. denied* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972). Unilateral mistake is sufficient to avoid a release only when there is evidence of fraud, misrepresentation or other inequitable conduct by the other party. *Hutcheson v. Frito-Lay, Inc.,* 315 F.2d 818, 823 (8th Cir.1963). Plaintiff's only claim in this regard is that defendant unfairly negotiated with other persons regarding the establishment of another dealership in the same area. Even if these claims are capable of substantiation there would be nothing inequitable in defendant's actions. The dealership agreement between the parties specifically provided that plaintiff had no right to an exclusive territory. Therefore, plaintiff's claims of a unilateral mistake do not entitle him to avoid the release.[7]

---

7. Minnesota law similarly requires that in order for a party to set aside a release on the basis of a unilateral mistake it is necessary to demonstrate inequitable conduct on the part of the

■ The release is clear and unambiguous in its effect. Accordingly, it is plaintiff's burden of proof to show that the release is invalid. *Young v. Robertshaw Controls Co.,* 430 F.Supp. 1265, 1268 (E.D. Pa.1977). In this regard plaintiff has failed to satisfy his burden of proof.

· ■ Finally, plaintiff argues that the release he signed is ineffective because it was signed under circumstances evincing economic duress. Plaintiff makes this allegation without documenting the evidence of any acts by defendant which constitute economic duress. In order to set aside the release on a claim of economic duress it is necessary to demonstrate that it was the intentional actions of the defendant which caused plaintiff's distressful economic plight. "Stress of business conditions does not constitute duress where the defendant is not responsible for the circumstances." *Tini Plumbing & Heating Co. v. Continental Casualty Co.,* 243 F.Supp. 229, 231 (D.Minn. 1965).

Similarly, in *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885 (3rd Cir.1975), the court held that a general release signed by the parties barred the antitrust action. In doing so, the court dismissed plaintiff's claim that the release should be set aside because it was signed under duress. At most, the court stated, the facts indicate that the economic conditions of the market place induced plaintiff to sign the release. In reaching that conclusion, the court noted the fact that plaintiff was represented by counsel at the time it signed the release and that plaintiff had failed to present any evidence of any illegal pressure being applied by the defendant.

Plaintiff's only allegations of any coercive tactics by the defendant to force plaintiff to sign the release concern plaintiff's bald assertions regarding defendant's granting of a new distributorship in plaintiff's area and its termination of plaintiff's distributorship. As previously discussed, these actions, even accepting plaintiff's version of the facts as correct, were neither illegal nor in contravention of the existing contract between the parties.

The conclusion reached by the court in *Fabert Motors, Inc. v. Ford Motor Co.,* 355 F.2d 888 (7th Cir.1966), is applicable here. There the Seventh Circuit Court of Appeals affirmed the trial court's grant of summary judgment in an automobile dealer's antitrust action against the manufacturer. Summary judgment was granted on the basis of a release signed by the parties. In dismissing plaintiff's claim that the release should not be given effect because it was signed by plaintiff under circumstances constituting economic duress, the court stated:

> Plaintiff was not unlawfully coerced into releasing its claims. Plaintiff was represented by counsel and executed this instrument only after due deliberation with knowledge of the pertinent facts. . . . Economic coercion is not established by showing that the release was given under pressure of financial circumstances under threat of Ford's having recourse to an action Ford was legally entitled to take. *Fabert Motors, Inc., supra,* at 891.

■ Like the above cited decisions, plaintiff was represented by competent counsel at the time of the signing of the release. Plaintiff, in fact, is at this time also a lawyer. The fact that a party signing a release was represented by counsel represents a common strain that runs through the numerous cases upholding a release which is being attacked as a product of economic coercion. It is a relevant fact in a court's determination of the validity of a release. *West v. Upper Mississippi Towing Corp.,* 221 F.Supp. 590, 596 (D.Minn. 1963), citing *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). It is both relevant in considering the claim of economic duress as well as a claim of unilateral mistake in the meaning of a contract.

other side. Such inequitable conduct can take the form of concealing facts or withholding information from an obviously mistaken party.

*Keller v. Wolf,* 239 Minn. 397, 58 N.W.2d 891 (1953). Again, there are no allegations of such conduct by the defendant here.

Another case where the fact that plaintiff was represented by counsel was noted is *Schott Enterprises, Inc. v. Pepsico, Inc.,* 520 F.2d 1298, 1299 (6th Cir.1975). There the court held that a mutual release signed by the parties represented a complete defense to an antitrust action. The plaintiff attempted to avoid the release by a claim that the release was signed under duress. The court rejected that argument finding that the fact that plaintiff was in a financial bind and was in need of money is insufficient to constitute duress so as to excuse the application of the contractual release.

The Eighth Circuit Court of Appeals has followed a similar reasoning. In *Oskey Gasoline & Oil Co., Inc. v. Continental Oil,* 534 F.2d 1281 (8th Cir.1976), the court upheld a partial grant of summary judgment by finding that a mutual release signed by both parties, which purported to release each party from claims arising prior to the date of signing, was binding on the parties and not voidable because of duress or economic coercion.[8] In reaching that decision, the court relied on its previous decision in *W. R. Grimshaw Company v. Nevil C. Withrow Co.,* 248 F.2d 896 (8th Cir.1957), stating:

> In that case we noted that one challenging a release as invalid because of economic coercion or duress must establish three elements: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. *Oskey Gasoline & Oil Co., Inc., supra,* at 1286.

Plaintiff has failed to establish these elements necessary to avoid the application of

the release.[9] As the court further stated in *Grimshaw, supra,* at 904:

> In order to substantiate the allegation of economic duress or business compulsion, the plaintiff must go beyond the mere showing of a reluctance to accept and of financial embarrassment. There must be a showing of acts on the part of the defendant which produced these two factors. The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities.

I am convinced that the release signed by the parties is a complete bar to this antitrust action. In order for defendant to be entitled to summary judgment, however, it must carry the burden of showing that no genuine issue of a material fact exists and that the movant is entitled to judgment as a matter of law. *Percival v. General Motors Corp.,* 539 F.2d 1126, 1129 (8th Cir.1976). Here, defendant bore his burden by exhibiting the instrument of release together with affidavit. *Barilla v. Clapshaw,* 306 Minn. 437, 237 N.W.2d 830 (1976). The release is clear and unambiguous, and therefore permits no jury consideration of extrinsic evidence. *Redel's Inc. v. General Electric Co.,* 498 F.2d 95, 100 (5th Cir.1974).

Summary judgment would not be proper, here, if the release signed by the parties needs to be set aside on the basis of any of the well-established legal grounds. In this regard, plaintiff bears the burden of proof which he has failed to sustain. A

---

**8.** In that decision the court noted that the question of whether the particular facts, as alleged, are sufficient to establish a defense of duress to avoid the release is a question of law for the court to determine. *Oskey Gasoline & Oil Co., Inc., supra,* at 1286.

**9.** See also *Wallner v. Schmitz,* 239 Minn. 93, 57 N.W.2d 821, 824 (1953), where the Minnesota Supreme Court expressly recognized that the party who is attempting to set aside a release on the basis of duress carries the burden of proof in that regard. In granting judgment on

the pleadings on the basis of the release, the court stated:

> It is not enough to merely allege that a payment was obtained by duress. . . . Facts must be set forth which, under the law, constitute duress, from which the court or jury may find that the release was not given voluntarily, and, also, so that the opposing party may be apprised of what facts the complaining party alleges occurred which constitute compulsion or duress.

grant of summary judgment by this court is, therefore, proper. *Van Houten Service, Inc. v. Shell Oil Co.,* 417 F.Supp. 523 (D.N.J. 1975), affirmed 546 F.2d 421 (3rd Cir.1975). The court reaches this conclusion in full recognition that summary judgment is not favored in antitrust litigation due to the usual complexity of factual issues. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). However, as the court noted in *Virginia Impression Products Co. v. SCM Corporation,* 448 F.2d 262, 266 (4th Cir. 1971), *cert. denied* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972):

> Since there were no questions of fact to be submitted to the jury, the construction of the contract was for the court. Its meaning is clear, and we find no prohibition in the statutes or in the policy behind the antitrust laws that prohibits the disclaimer of antitrust claims by a general release.

### CONCLUSION

For all of the reasons expressed herein and after a careful review of the file, it is the opinion of the court that summary judgment should be granted in favor of the defendant and that this case should be dismissed. Counsel for the defendant is directed to prepare an appropriate order.[10]

---

**10.** Because of the conclusion of the court in regard to the release signed by the parties, I need not consider *defendant's second claim* that plaintiff's failure to prosecute requires the dismissal of this case. I nevertheless do express my concern about plaintiff's failure to institute any discovery for nearly a three year period. Such lack of diligence *is difficult to* understand or accept.