Robert **WIEDERHOLD**, Plaintiff,

v.

**ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Defendant.**

**Civ. No. 73 H 166(2).**

United States District Court,
N. D. Indiana,
Hammond Division.

Jan. 9, 1974.

**1056**

Justin Waitkus and John A. Hovanec, Gary, Ind., for plaintiff.

Paul Noland, Chicago, Ill., Charles A. Myers, Hammond, Ind., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

■ This action is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Defendant alleges that plaintiff has signed a release discharging it from all liability. Since matters outside the pleadings have been presented to and accepted by the court, defendant's motion will be treated as one for summary judgment under Rule 56, Fed. R.Civ.P., as required by Rule 12(b), Fed. R.Civ.P. The motion will be denied.

Jurisdiction of the court is predicated on the diverse citizenship of the parties and on the Federal Employers' Liability Act (FELA), 45 U.S.C.A. § 51 et seq.

Plaintiff alleges the following facts. Plaintiff was employed by the defendant railroad as a driver and chauffeur. On October 27, 1970, while driving as a servant and agent of defendant, plaintiff was involved in an automobile accident with John Podrazik. The accident occurred when Podrazik made an improper left hand turn in front of the 1970 Ford automobile driven by plaintiff and owned by defendant. Plaintiff attempted to stop the vehicle that he was driving but the brakes failed to hold and a collision resulted. As a result of the collision, plaintiff claims that he suffered permanent injuries to his head, neck, back and knee which required hospitalization and forced a prolonged curtailment of work.

The basis for plaintiff's cause of action is that the defendant was negligent in its failure to furnish plaintiff with a proper and safe automobile. Defendant failed to properly inspect the automobile and if such an inspection had been performed, defendant would have discovered the alleged defective condition and the risk of injury which it posed to plaintiff. Plaintiff alleges that this negligent action by defendant was the proximate cause of his injuries. Plaintiff filed a personal action against Podrazik and a Workmen's Compensation Act claim against defendant. While the Workmen's Compensation claim was pending, plaintiff, with the advice of an attorney, settled the action against Podrazik and signed a release. Subsequently, the Indiana Workmen's Compensation case was dismissed because defendant was subject to the provisions of the Federal Employers' Liability Act and not the Indiana Workmen's Compensation law.

■ Plaintiff's complaint is unclear but he apparently seeks recovery on two alternate theories: under the Federal Employers' Liability Act (FELA) 45 U.S.C.A. § 51 et seq., and as a negligence action with jurisdiction of the court based on diversity of citizenship of the parties under 28 U.S.C.A. § 1332. However, it is clearly settled that the F.E.L.A. provides the exclusive remedy for recovery of damages by an employee of a railroad engaged in interstate commerce, if the employee's injury was caused due to the negligence of the railroad. New York Central & Hudson River R. R. Co. v. Tonsellito, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917); Jess v. Great Northern Ry. Co., 401 F.2d 535 (9th Cir. 1968). Consequently, plaintiff cannot also maintain a negligence action since the FELA action is in fact a negligence action. Barrett v. Toledo, Peoria & Western R. R. Co., 334 F.2d 803 (7th Cir. 1964).

■ Federal law must be applied to determine whether the release of one joint tortfeasor from liability releases all joint tortfeasors in FELA actions. Dice v. Akron, Canton & Youngstown R. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L. Ed. 398 (1952); Panichella v. Pennsylvania R. R. Co., 268 F.2d 72 (3rd Cir.

1959). However, what the applicable federal law is in this area is not completely settled. The original common law rule stated that the release of one joint tortfeasor released all, even if there was an express reservation of the releasor's rights against the tortfeasors who were not parties to the release. *See* W. L. Prosser, Torts 269–73 (3rd ed. 1964); Barnett, Release of Joint Tortfeasors in Texas, 36 Texas L.R. 55 (1957); Annot., 73 A.L.R.2d 403 (1960). Defendant asserts that this statement of the law also represents the current federal law. However, the original common law rule has been subjected to severe attack both by courts and by writers. *See* Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77, rehearing denied, 401 U.S. 1015, 91 S.Ct. 1247, 28 L. Ed.2d 552 (1971); McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659 (1943); Prosser, *supra* at 270–72; Annot., 73 A.L.R.2d 403, 407 (1960). Text writers without notable exception have expressed the view that the reasons given for the common law rule have been inadequate. Havinghurst, The Effect of A Settlement With One Co-Obligor Upon the Obligations of the Other, 45 Cornell L.Q. 1 (1951). The result of such criticism has been that courts have devised many ways to ease the harshness of the rule or many states have changed it by statute. *See* Prosser, *supra* at 268–73; F. Harper & F. James, Torts 713–14 (1956).

The difficulty in determining the current federal rule arises because the rule has been changed in many contexts, but it has not been reviewed recently in others. The rule has not been recently analyzed in the context of FELA actions. One of the first cases to address the problem was Falco v. Pennsylvania R. R., 202 Misc. 769, 109 N.Y.S.2d 279 (1951). The New York Supreme Court held that the common law rule that release of one joint tortfeasor releases all was applicable in FELA cases. However, in *Falco* the court applied New York law and did not attempt to determine the existing federal rule. An earlier federal case, Husley Refining v. Barnes, 119 F.2d 715 (9th Cir. 1941), had refused to apply the harsh common law rule by categorizing the problem as one of independent concurrent torts rather than as a joint tort. In Panichella v. Pennsylvania R. R. Co., 167 F.Supp. 345 (W.D.Pa.1958), the court held that the release of one joint tortfeasor did not release others in an FELA case. The court reasoned that to apply the common law rule would render the federal law nugatory. *Id.* at 349. The court also characterized the problem as one of independent concurrent negligent acts and not one involving sufficient concert of action to make the defendants joint tortfeasors. However, the *Panichella* decision was reversed in 268 F.2d 72 (3rd Cir. 1959), cert. denied, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960). The court, citing Falco v. Pennsylvania R. R., *supra*, held that when the employee voluntarily, knowingly and advisedly entered the release with the third party, he also released the railroad.

Although the *Falco* and *Panichella* decisions support the defendant's position, the continued vitality of these decisions is placed in doubt by recent decisions and attacks on the common law rule that release of one joint tortfeasor releases other joint tortfeasors. The original common law rule has been so eroded that in all but two states it is now possible to settle with one tortfeasor without releasing the others. Restatement (Second), Torts, Explanatory Notes § 885, comment *e* at 189 (Tent. Draft No. 16, 1970). *See also*, W. L. Prosser, Torts 304 (4th ed. 1971), Annot., 73 A.L.R.2d 403, 408 (1960). Several reasons exist why federal law in this area should accommodate state law. In FELA actions federal law is applied in order to insure a uniform application in all states. It would be anomalous for the federal law on releases to conflict with the state laws. Since most states no longer adhere to the common law rule of releases, it would create confusion for

the law of releases to be different depending on whether the action against the party released was based on state or federal law. Under such circumstances it would be possible to settle the FELA claim and still preserve an action against another joint tortfeasor if based on state law, but it would not be possible to settle the state law claim and still proceed with an FELA action.

Another problem arises because many standard release forms will be printed to conform to state law. Both attorneys and parties may resort to such forms for FELA cases only to find that they have released tortfeasors they did not intend to release. Since the state rule would be less harsh than the federal rule on the effect of releases, a party may fall into a trap by signing a release which would not release all tortfeasors in actions based on state law, but would release all tortfeasors in causes of action founded on federal law. For these reasons the *Falco* and *Panichella* holdings should be re-exaimined.

At the time *Falco* was decided, relying mainly on state law rather than federal, a strong federal precedent was in existence. The leading federal case on the effect of the release of one joint tortfeasor on other tortfeasors is McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659 (1943). In *McKenna*, Justice Rutlege, writing for the court, refused to follow the verbal formalism of the common law rule and held that the intentions of the party executing the release should control in determining whether all tortfeasors were released. The court stated that results under the common law rule are incongruous, unjust and unintended, stifling both compromise and settlement and trapping unwary plaintiffs. The court decided that there was no basis for the reasons advanced in support of the rule. The idea of singleness of the injury only has a foundation when complete indemnity has been made. The facts of the particular situation must be utilized to determine whether a full reparation was made. Partial satisfaction taken in compromise and release

of liability of one or some of the wrongdoers does not discharge others. *Id.* at 662–665.

The decision in *McKenna* has been cited with approval by commentators, *see* W. L. Prosser, Torts 272 (3d ed. 1964), and has been recognized as the federal rule. Stella v. Kaiser, 221 F.2d 115 (2d Cir. 1955), cert. denied, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955). However, neither the *Falco* nor the *Panichella* decisions referred to the decision in *McKenna*. Both the *Falco* court and the *Panichella* court relied on Callen v. Pennsylvania R.R.; 332 U.S. 625, 68 S. Ct. 296, 92 L.Ed. 242 (1948). However, the *Callen* case merely held that the release of a railroad by an employee did not violate § 5 of the Act, 45 U.S.C.A. § 55, and did not involve a determination of the effect of a release on joint tortfeasors.

The current confusion in the federal law was recently set forth in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 341, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). The court stated:

Three rules have developed to deal with the question whether the release of one joint tortfeasor releases other tortfeasors who are not parties to or named in the release. The ancient common-law rule, which was grounded upon a formalistic doctrine that a release extinguished the cause of action to which it related, was that a release of one joint tortfeasor released all other parties jointly liable, regardless of the intent of the parties. . . . While this Court has referred to this rule in cases where the rights of the litigants were controlled by state or federal common law . . . we are cited to no case where we have applied the rule to a statutory cause of action created under federal law. Indeed, we have expressly repudiated the rule. See Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 501, 84 S.Ct. 1526, 1539, 12 L.Ed.2d 457 (1964). . . . Moreover, in the lower federal courts, causes of action based

upon federal statutes have generally been governed by one of the other two rules. The first of these rules provides that, although a release of one coconspirator normally releases all others, it will not have such an effect if a plaintiff expressly reserves his rights against the others. This rule . . . has been applied in a number of antitrust cases. . . . A final rule, which has gained support in several recent decisions and been adopted by the American Law Institute in a tentative draft of the Second Restatement of Torts, provides that the effect of a release upon coconspirators shall be determined in accordance with the intentions of the parties. . . . *Id.* at 343–345, 91 S.Ct. at 808.

The court went on to point out that the third rule had been adopted in Aro Mfg. Co. v. Convertible Top Replacement, *supra*, a patent infringement case. The court then adopted the intent rule for antitrust cases, stating that "[t]he straightforward rule is that a party releases only those other parties whom he intends to release." *Id.* at 347, 91 S.Ct. at 810. The court buttressed this decision by referring to the fact that the American Law Institute had abandoned the rule requiring an express reservation of rights in order to save them. The new formulation of the Restatement on the law of releases of joint tortfeasors provides that:

(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it shall do so.

(2) A covenant not to sue one tortfeasor, or not to proceed further against him, does not discharge any other tortfeasor liable for the same harm.

(3) Payments made by any person in compensation of a claim for a harm for which others are liable as tortfeasors diminish the claim against them, whether or not the person making the payment is liable to the injured person, and whether or not it is so agreed at the time of payment, or the payment is made before or after judgment. The extent of the diminution is the amount of the payment made, or a greater amount if so agreed.

Restatement (Second) Torts § 885 (Tent. Draft No. 16, 1970). Thus, whether the parties to the release agreed to release all tortfeasors depends upon their intent and involves a question of fact. *See*, Restatement, *supra*, comment b and c.

■ Although the *Zenith Radio* case adopted the intent rule only for antitrust cases, the broad language of the court indicates that the common law rule is not applicable to statutory causes of action created under federal law such as FELA actions. It is also clear that compelling reasons exist for adopting a rule focusing on the intent of the parties in FELA actions. The statute, by requiring the application of federal law strives for uniform results. Currently among the states various rules regarding releases are applied. To adopt a restrictive federal rule regarding releases, such as the common law rule, would mean that most releases which would preserve a right of action against other tortfeasors under state law would not preserve such rights if used in a FELA action. If the broader intent rule is applied, the many variations of release law among the states can be accommodated by the federal law, since in each case it is a factual question whether the plaintiff intended to release all or just some tortfeasors. Thus, if under state law a right to proceed against other tortfeasors is only preserved if expressly stated in the release, a party executing such a release in compliance with state law would not lose his right of action under the FELA, as his intent to preserve his action would clearly be shown. If state law focused on intent, then it

also would be accommodated by federal law. Similarly, if a state provided that a covenant not to sue could be used in place of a release in order to safeguard the right to proceed against a joint tortfeasor, the use of such a covenant would be evidence of an intent not to release all tortfeasors under federal law. By applying the intent rule in federal actions, a party could properly preserve his right of action under state law and still be safeguarded under the federal law. The intent rule best minimizes potential conflicts in the federal system.

The modern trend is toward adoption of a rule which abrogates the harsh common law rule and focuses on the intention of the parties as to whether the effect of the release is to release tortfeasors who are not parties thereto. The test poses no problems which are any different from the ascertainment of intent of parties to contracts. Annot., 73 A.L.R.2d 403, 408 (1960). "The only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." W. L. Prosser, Torts 304 (4th ed. 1971). *See also* Harper & James, *supra* at 712.

■ The rule as set forth in Falco v. Pennsylvania R.R., *supra*, and Panichella v. Pennsylvania R.R., *supra*, is not controlling. A federally created right should not be vitiated by an outdated, much criticized anachronism of the common law. The recent trend in federal cases make it clear that the rule to be applied in FELA cases is that "a party releases only those other parties whom he intends to release." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 345, 347, 91 S.Ct. 795, 810, 28 L. Ed.2d 77 (1971). Whether the release of one joint tortfeasor operates as a release of all joint tortfeasors depends on whether the injured party has received full satisfaction and whether the parties intended that the release be in full satisfaction of the injured party's claim, thus releasing all tortfeasors from liability. *See* Zenith Radio Corp. v. Hazeltine Research, Inc., *supra*; McKenna v. Austin, *supra*; W. L. Prosser, Torts 304 (4th ed. 1971); Harper & James, *supra* at 712.

■ Applying the rule to the facts of this case, it is necessary to determine whether the plaintiff intended to release the defendant when he signed the release of Podrazik. It is elementary that a summary judgment will not be granted if a genuine issue of a material fact exists. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); American Securit Co. v. Hamilton Glass Co., Inc., 254 F.2d 889, 892 (7th Cir. 1958). Defendant asserts that plaintiff intended a general release of all tortfeasors because the release instrument not only released Podrazik but also "all other persons firms or corporations liable or who might be claimed to be liable. . . ." Defendant stresses that the mere fact that plaintiff also had an action pending against defendant under the Indiana Workmen's Compensation Act at the time he entered the release agreement does not indicate an intention contrary to the words of the agreement. Defendant argues that plaintiff was barred according to Burns Indiana Statute 40–1213 (I.C.1971, 22–3–2–6) *from* receiving compensation under the Indiana Act because he had entered into a settlement. Defendant argues that plaintiff cannot offer any proof to counter the express language of the release and that such language evinces an intention to release defendant. Furthermore, defendant argues that Podrazik might be liable to defendant if plaintiff recovers under the FELA and for this reason Podrazik sought a complete release of himself and the defendant in order to protect himself from a potential claim by the railroad.

Plaintiff asserts that he did not intend for the release to be in full compensation for his claim. Plaintiff argues

that when he signed the release for $8,000, Podrazik only carried $10,000 liability insurance and that the settlement was entered because it was within the policy limits and not because it was intended to be in full satisfaction of the claim.

Plaintiff also asserts that at the time he entered the release he was still pursuing a claim against defendant under the Indiana Workmen's Compensation Act. Defendant had filed a motion to dismiss that action indicating that plaintiff's only possible cause of action was under the provisions of the FELA. But plaintiff argues that since the statute of limitations had not run, he knew he could still bring an FELA action. Because of this fact, plaintiff states that he never intended to release the defendant from potential liability under the FELA.

It is clear that issues of fact do exist. If plaintiff was aware that his proper cause of action was under the FELA, he would not be concerned with Burns Indiana Statute 40–1213 and the fact that settlement with one tortfeasor would terminate his action on the Workmen's Compensation claim. Plaintiff knew that defendant had already moved to dismiss the Workmen's Compensation claim but that he still had time within which to bring a federal claim under the FELA. It is not for the court on a motion for summary judgment to determine the facts. Disputed facts do exist which may support plaintiff's claim that he did not intend to release defendant. Plaintiff states that he did not receive full compensation and alleges that his medical bills and lost wages alone amounted to over $11,000. Defendant does not address itself to the issue of whether plaintiff was fully compensated. Thus, several important and material factual disputes exist. Since it is not proper for a court to resolve these disputes on a summary judgment motion, such motion must be denied.[1]

---

1. It should be pointed out that even if the trier of fact finds that plaintiff did not intend to release defendant, plaintiff will not be entitled to a double recovery. Any liability of the defendant will be reduced by the amount received by plaintiff in consideration for the release of other joint tortfeasors.