**CITY OF CLEVELAND, Plaintiff,**

v.

**The CLEVELAND ELECTRIC ILLUMINATING COMPANY, Defendant.**

**Civ. A. No. C75–560.**

United States District Court,
N. D. Ohio, E. D.

Sept. 26, 1980.

Supplemental Order Oct. 1, 1980.

William B. Norris, Hahn, Loeser, Freedheim, Dean & Wellman, James E. Young, Thomas E. Wagner, Director of Law, City of Cleveland, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

Presently before the Court in this antitrust proceeding is what has been styled "Defendant's Memorandum On Its Release From Liability For Acts Allegedly Taken Jointly by CAPCO [Central Area Power Coordinating Group] Members, And The Inadmissibility of Evidence Thereof". This submission, which is accompanied by copies of certain previously executed settlement instruments which assertedly evidence an intent to release defendant The Cleveland Electric Illuminating Company ("CEI"), is in effect a motion for summary judgment and is accordingly governed by the provisions of Rule 56, Fed.R.Civ.P. Plaintiff, by memorandum of September 23, 1980, has responded in opposition.

The instant record discloses that the Complaint in this action was originally filed on July 1, 1975, alleging violations of both Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and naming as defendants CEI and certain additional private investor-owned utilities. Among the allegations of conspiratorial conduct advanced in the original Complaint were the charges that the defendants jointly refused to (i) deal with plaintiff in the power exchange market, or (ii) admit plaintiff to membership in CAPCO or otherwise permit the City to have access to the benefits of coordinated operations and development. Complaint ¶ 39.

In February, 1980, however, the City entered into separate but substantially identical settlement agreements with each of the non-CEI defendants. Pursuant to the terms of the agreements, the plaintiff and each of the settling defendants subsequently executed separate releases, the text of which is reproduced below.[1] Following this tribunal's acceptance of the settling parties' stipulations of dismissal, the Court, on June 18, 1980, acceded to the City's unopposed request to amend its Complaint, thereby

---

1. The releases in question provide as follows:

In consideration of the respective undertakings and agreements between the City of Cleveland ("City") and [the dismissed co-defendant] contained in a certain settlement [sic] and Technical Assistance Agreement ("Agreement") of even date hereof, City and

[the dismissed co-defendant] do hereby mutually release and forever discharge each other *and all parties*, subsidiaries, predecessors, successors, affiliated or related companies, officers, agents, employees and assigns of each, past, present or future, of and from each and every claim, demand, action, cause

eliminating from the instant controversy the previously asserted claims of conspiratorial misconduct. The ensuing Amended Complaint, however, continued to seek recompense from CEI for its alleged role in denying plaintiff the benefits of power pooling and associated power exchange services pursuant to the retained Section 2 monopolization and attempted monopolization claims. *See* Amended Complaint of June 19, 1980, ¶ 35(b) and (c). It is this potential liability—the denial of access to the benefits of coordinated operations and development—which CEI presently maintains has been released as a consequence of the foregoing settlement transactions.

■ In passing on the motion at bar, it should be observed at the outset that this Court, as a federal tribunal presiding in an antitrust proceeding, is empowered to interpret the terms of the release in question without regard to state law. *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 889 (3d Cir. 1975); *Coester v. H.H.B. Inc.*, 447 F.Supp. 372, 376 (D.S.D.1978). *See Lo-. cafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977).[2] Moreover, and of particular relevance herein, existing precedent provides that federal law governs the determination of whether the release of one antitrust co-conspirator operates to effect the discharge of any other such conspirator. Thus, in the leading case of *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), the Supreme Court, in prescribing a uniform federal standard to govern the effect of a release

upon antitrust co-defendants, considered and specifically rejected certain alternative standards in force in various jurisdictions which would either "frustrate . . . partial settlements, and thereby promote litigation" or unnecessarily "create a trap for unwary plaintiff's attorneys." *Id.* at 347, 91 S.Ct. at 810. The Court instead embraced the "straightforward rule . . . that a party releases only those other parties whom he intends to release." *Id.*

■ The pronouncements of the Supreme Court in *Hazeltine* thus dictate that the effect of a release upon co-conspirators is to be determined in accordance with the intentions of the parties. In ascertaining the intent which is ultimately to be afforded legal effect, it is incumbent upon the trial court to examine in the first instance the language of the release itself as well as the circumstances surrounding its execution. *Ruskay v. Waddell*, 552 F.2d 392, 395–396 (2d Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *American Commercial Lines, Inc. v. Valley Line Co.*, 529 F.2d 921, 925 (8th Cir. 1976); *In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552, 559 n. 6 (D.Md.1978). In addition, the trial court, in determining the intent of the parties, may, under the circumstances prevailing herein, properly consider extrinsic evidence, including the underlying contractual agreement whereby the parties affirmatively undertook to execute the releases under scrutiny. This result follows from the established principle that the parol evidence rule does not bar consideration of external evidence in in-

---

of action, damage, expense, cost, attorneys' fees, or liability of any kind whether known or unknown which either party hereto now has or has ever had including, without limitation, all claims of the parties hereto that are or might have been embodied in that certain lawsuit pending in the United States District Court for the Northern District of Ohio, Eastern Division entitled *City of Cleveland v. The Cleveland Electric Illuminating Co., et al.*, Civil Action No. C75–560, but specifically excluding any actions presently pending before the Nuclear Regulatory Commission or

actions directly arising from such proceedings in which City and [the dismissed co-defendant] are parties and further specification excluding any claims or causes of action arising from or out of the enforcement or breach of the Agreement. [emphasis supplied].

2. This principle would appear to obtain even where, as here, the parties specifically provide that the agreement is to be construed in accordance with state law. *Locafrance U. S. Corp., supra* at 1115 n. 3; *Coester, supra.*

stances where, as here, the litigant interposing the release as an affirmative defense, see Rule 8(c), Fed.R.Civ.P., was not a party to the release instrument. As observed by the Court in *Hazeltine, supra* 401 U.S. at 347 n. 12, 91 S.Ct. at 810:

> Resort may be had to the contract in construing the release since the parol evidence rule is usually understood to be operative only as to parties to a document, and HRI here was not a party to the release. See *Stern v. Commissioner,* 137 F.2d 43, 46 (CA 2 1943); *O'Shea v. New York, C & St. L. R. Co.,* 105 F. 559, 562–563 (CA 7 1901); Restatement (Second), Torts § 885, Comment d (Tent. Draft No. 15, 1980). See generally 9 J. Wigmore, Evidence § 2446 (3d ed. 1940).

The Second Restatement of Torts, § 885, Comment d, similarly provides:

> The agreement as to the effect of the release may be proved by external evidence; and the objection of the parol evidence rule is met by the fact that the second tortfeasor who raises the question is not a party to the instrument.

In seeking to avail of the release in question, CEI relies in primary part upon the broad "all parties" language of the instrument, emphasized below, *infra* n. 1, which assertedly evidences a clear intent to discharge all of the original parties to the instant lawsuit from any and all liability arising from that conspiratorial conduct alleged in the plaintiff's original Complaint. In support of this contention, CEI argues that neither the release or the underlying settlement agreements contain a clear and unequivocal reservation of the plaintiff's right to predicate liability in the instant cause upon that conduct which was previously the subject of the original conspiracy allegations.[3] CEI observes additionally that the City's election to effectuate the discharge of the settling defendants by means of a release, as distinct from a covenant not to sue, further evidences, at least under Ohio law, an intent to release CEI from the liability in issue. See *Whitt v. Hutchison,* 43 Ohio St.2d 53, 330 N.E.2d 678, 683–684 (1975). See also Restatement (Second) Torts § 885.

The defendant's foregoing assertion, collectively viewed, are certainly not insubstantial. To be sure, there can be little doubt that the settlement documents here in question are, at best, inartfully drafted.

---

**3.** The indemnification provisions of the settlement agreements do appear to expressly preserve the City's right to pursue against CEI "any claim based on a single firm monopoly theory". These provisions state in pertinent part:

> 6. City and TE [The Toledo Edison Company] maintain that none of the other defendants ("other defendants") in the Lawsuit has any right of contribution from TE. City agrees, however, to reduce any final judgment by the amount of any claims of contribution arising out of any and all conspiracy claims ("conspiracy judgment") and excluding any claim based on a single firm monopoly theory against the Cleveland Electric Illuminating Company (exclusive of attorneys' fees, costs and any monetary value attributable to technical assistance) which it may obtain against any other defendant in the Lawsuit; . . .

The extent to which the foregoing provisions evidence an intent to release CEI from liability stemming from the conduct underlying the original conspiracy claims is, understandably, disputed by the instant parties. The City maintains that the very insertion of the indemnification provisions, whereby the plaintiff agreed to hold each of the particular dismissed defendants harmless from ensuing contribution claims, discloses that the settling parties did not intend that the City relinquish its conspiracy claims vis-a-vis CEI. The City insists in this regard that there would have been no necessity for the indemnification features of the settlement agreements had the plaintiff's conspiracy claims been totally extinguished. In rebuttal, CEI points out that the settlement documents expressly provided for the contingency that not all of the eventually dismissed co-defendants would in fact agree to the settlement. Accordingly, the inclusion of the indemnification provisions, which expressly extend to any claims of contribution arising out of a conspiracy judgment obtained "against any other defendant", is not necessarily inconsistent with the defendant's position that the settlement documents manifest an intent to release CEI from all potential liability stemming from the conduct comprising the original conspiracy claims.

In passing on the motion presently before it, however, the Court must remain mindful of the pronouncements of the Sixth Circuit Court of Appeals concerning the application of Rule 56, Fed.R.Civ.P. As recently stated in the case of *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979):

> Although summary judgment is a useful and often efficient device for deciding cases, it must be used only with extreme caution for it operates to deny a litigant his day in court. *Poller v. Columbia Broadcasting*, 368 U.S. 464, 467, 82 S.Ct. 486, [488] 7 L.Ed.2d 458 (1962); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1196 (6th Cir. 1974). Thus on a motion for summary judgment the movant has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion. *Ad-ickes v. Kress & Co.*, 398 U.S. 144, 157, 158–59, 90 S.Ct. 1598, [1608–1609] 26 L.Ed.2d 142 (1970); *United States v. Die-bold*, 369 U.S. 654, 655, [82 S.Ct. 993, 8 L.Ed.2d 176] (1962) (per curiam); *United States v. Articles of Device, etc.*, 527 F.2d 1008, 1011 (6th Cir. 1976); *see Ott v. Midland Ross Corp.*, 600 F.2d 24, at 28 & n. 3 (6th Cir. 1979). Indeed, we have previously held that while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962); *see* 6 Moore's Federal Practice ¶ 56.15[5], at 56–472 (2d ed. 1976).

Applying the foregoing principles, this Court cannot conclude on the basis of the present record that CEI has sustained its burden of demonstrating "conclusively" the absence herein of any genuine issue regarding the settling parties' intent. The Court observes initially that the previously alluded to "all parties" terminology contained in the release is not entirely free from ambiguity. Although CEI advances the plausible rationale that this terminology encompasses all of the original defendants to the instant controversy, the language of the underlying settlement agreements lend little if any support to this hypothesis, as the agreements refer to, and indeed define this particular class of litigants as "other defendants" to the lawsuit. *See infra* n. 3. In a similar vein, CEI's effort to analogize the "all parties" phraseology herein to the considerably more explicit language of the instrument at issue in *Morison v. General Motors Corp.*, 428 F.2d 952 (5th Cir.), *cert. denied*, 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 141 (1970), which purported to release, *inter alia*, "all other persons, firms, or corporations liable or who might be claimed to be liable", is unpersuasive.

The circumstances surrounding the execution of the settlement documents in issue further support the conclusion that there exists within the purview of Rule 56 a genuine issue as to the parties' intent. It is to be observed in this regard that CEI was neither a party to the February, 1980 settlements nor, from all indications, a participant in the underlying settlement negotiations. Moreover, the settlement instruments, viewed in their entirety, clearly reflect that it was not within the contemplation of the settling parties that a voluntary accord of any kind would subsequently be reached with CEI. Indeed, the provisions of paragraph 5 of the applicable settlement agreements impose upon former defendants Toledo Edison and Ohio Edison the obligation to present the accord as a "fair basis upon which to settle all claims" to only the non-CEI defendants.

In view of the foregoing, the Court is of the view that the granting of summary relief is currently inappropriate. Underlying the Court's conclusion is the recognition that, under the circumstances herein presented, the litigants appear entitled to adduce extrinsic evidence in order to assist the Court in ascertaining that intent which,

under the pronouncements of *Hazeltine*, must be assigned controlling weight. Accordingly, the Court will, in accordance with the applicable authorities, and pursuant to the plaintiff's request, extend to the litigants the "opportunity to introduce evidence with respect to the issue in controversy—the actual intent and understanding of [the settling parties] when the . . . releases were executed." *M. Sobol, Inc. v. A. H. Robins Co.*, 446 F.2d 546, 548 (2d Cir. 1971). *Accord: Mustang Oil Co., Inc. v. Crown Central Petroleum Co.*, 52 F.R.D. 207 (W.D. N.C.1971); *Novak v. General Electric Corp.*, 282 F.Supp. 1010 (E.D.Pa.1967). *See also Wiederhold v. Elgin, Joliet and Eastern Railway Co.*, 368 F.Supp. 1054, 1060–1061 (N.D.Ind.1974).

For the reasons hereinbefore stated, the defendant's motion for summary judgment is hereby denied.

IT IS SO ORDERED.

### SUPPLEMENTAL ORDER

By Memorandum and Order of September 26, 1980, this Court denied what was in effect a motion for summary judgment submitted by defendant The Cleveland Electric Illuminating Company (CEI) pursuant to its assertion that certain settlement transactions of February, 1980, served to release CEI from any and all liability stemming from that conduct which formerly comprised the plaintiff's original conspiracy claims. In declining to grant the defendant's request for summary relief, the Court concluded that CEI had failed under the stringent standards of Rule 56, Fed.R. Civ.P., to discharge its burden of demonstrating the absence of any genuine issue respecting the settling parties' intent. This determination was predicated upon the Court's assessment of the language of the settlement instruments and the circumstances surrounding their execution as well as the Court's recognition that consideration of extrinsic evidence could properly be undertaken in ascertaining that intent which, under the pronouncements of *Zenith*

*Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 347, 91 S.Ct. 795, 810, 28 L.Ed.2d 77 (1971), is ultimately to be assigned dispositive weight.

In accordance with its conclusion that the parties were entitled to adduce external evidence in support of their respective contentions, the Court, in its September 26th decree, extended to the litigants the "opportunity to introduce evidence with respect to the issue in controversy—the actual intent and understanding of [the settling parties] when the . . . releases were executed." *M. Sobol, Inc. v. A. H. Robins Co.*, 446 F.2d 546, 548 (2d Cir. 1971). In availing themselves of this opportunity, the parties subsequently stipulated that this factual matter, *see In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552, 559 n. 6 (D.Md.1978); *Novak v. General Electric Corp.*, 282 F.Supp. 1010, 1023 (E.D.Pa.1967); *Mustang Oil Co. Inc. v. Crown Central Petroleum Co.*, 52 F.R.D. 207 (W.D.N.C.1971); *Wiederhold v. Elgin, Joliet and Eastern Railway Co.*, 368 F.Supp. 1054, 1060–1061 (N.D.Ind. 1974), could be tried to the Court without the necessity of a jury determination. Accordingly, an evidentiary hearing outside the presence of the jury was conducted on September 29, 1980.

The mutual releases executed by the plaintiff and the four dismissed defendants provide as follows:

> In consideration of the respective undertakings and agreements between the City of Cleveland ("City") and [the dismissed co-defendant] contained in a certain settlement [sic] and Technical Assistance Agreement ("Agreement") of even date hereof, City and [the dismissed co-defendant] do hereby mutually release and forever discharge each other *and all parties*, subsidiaries, predecessors, successors, affiliated or related companies, officers, agents, employees and assigns of each, past, present or future, of and from each and every claim, demand, action, cause of action, damage, expense, cost, attorneys' fees, or liability of any kind whether

known or unknown which either party hereto now has or has ever had including, without limitation, all claims of the parties hereto that are or might have been embodied in that certain lawsuit pending in the United States District Court for the Northern District of Ohio, Eastern Division entitled *City of Cleveland v. The Cleveland Electric Illuminating Co., et al.,* Civil Action No. C75–560, but specifically excluding any actions presently pending before the Nuclear Regulatory Commission or actions directly arising from such proceedings in which City and [the dismissed co-defendant] are parties and further specification excluding any claims or causes of action arising from or out of the enforcement or breach of the Agreement. [emphasis supplied].

In seeking to avail of the releases in question, CEI asserts that the broad "all parties" language of the instruments, emphasized above, evidences a clear intent to discharge all of the original parties to the instant action from all liability arising from the conspiratorial conduct alleged in the plaintiff's original Complaint. The defendant argues in this regard that while the underlying settlement agreements appear to expressly preserve the City's right to pursue against CEI "any claim based on a single firm monopoly theory", neither the releases or the aforesaid agreements contain a clear and unequivocal reservation of the plaintiff's right to predicate liability herein upon that conduct which was formerly the subject of the original conspiracy allegations. CEI urges additionally that the City's insistence upon effectuating the discharge of the settling defendants by means of a release, as distinct from a covenant not to sue, further evidences, at least under Ohio law, an intent to release CEI from the liability here in issue. *See Whitt v. Hutchison,* 43 Ohio St.2d 53, 330 N.E.2d 678, 683–684 (1975). *See also* Restatement (Second) Torts § 885 (1977).

■ The foregoing assertions must be assessed in light of the principles enumerated in *Hazeltine, supra,* wherein the Supreme Court, in prescribing a uniform federal standard to govern the effect of a release upon antitrust co-conspirators, embraced the "straightforward rule ... that a party releases only those other parties whom he intends to release." *Id.* 401 U.S. at 347, 91 S.Ct. at 810. Applying this criteria, the Court, upon a careful review of the record, is constrained to conclude that it would be against the manifest weight of the evidence to construe the settlement instruments in question as effectuating a release of the defendant CEI. The Court observes in this respect that the testimony herein adduced establishes, in an uncontroverted fashion, that it was neither the intent of the City or former defendant Ohio Edison, the principal drafters of the settlement documents in issue [1], to effect in any way a discharge of CEI's potential liability in the instant controversy. Transcript at pp. 2390, 2401–2402. The fact that the settling parties contemplated that the City was to retain all claims against CEI is further evidenced by the circumstances surrounding the settlement transactions [2] as well by the settling parties' insistence upon incorporating within the settlement agreements provisions de-

1. It appears from the record that the settlement instruments drafted and executed by the City and Ohio Edison were subsequently employed "as a guide" for the construction of substantially identical instruments which were utilized to effect the release of the remaining non-CEI defendants. *See* Defendant's Exhibit R–1 at p. 3.

2. As observed in this tribunal's Memorandum and Order of September 26, 1980, 538 F.Supp. 1288, at 1291:

The circumstances surrounding the execution of the settlement documents in issue further support the conclusion that there exists within the purview of Rule 56 a genuine issue as to the parties' intent. It is to be observed in this regard that CEI was neither a party to the February, 1980 settlements nor, from all indications, a participant in the underlying settlement negotiations. Moreover, the settlement instruments, viewed in their entirety, clearly reflect that it was not within the contemplation of the settling parties that a voluntary accord of any kind would subsequently be reached with CEI. Indeed, the provisions of paragraph 5 of the applicable settlement agreements impose upon former de-

signed to, in effect, indemnify the settling defendants from future contribution claims. The Court notes in this latter regard that while the indemnification provisions, by their terms, appear to extend to any claim of contribution arising out of a conspiracy judgment obtained "against any other defendant", the evidence adduced compels the conclusion that the indemnification features were primarily intended to protect the settling defendants from that contribution which might be sought by defendant CEI. See Defendant's Exhibit R–4 at p. 5; Transcript at p. 2392. The fact that the settling parties felt constrained to provide for the contingency that CEI might subsequently advance meritorious contribution claims quite clearly suggests that the parties understood that the City did not intend, at least at this juncture, to relinquish its conspiracy claims vis-a-vis CEI, as there would have been no necessity for indemnification had these particular claims been entirely extinguished.

Further support for the Court's conclusion that the settling parties did not intend to effectuate a release of CEI arises from the fact that the inclusion of the previously alluded to "all parties" language of the instruments, upon which the defendant principally relies, was inadvertently and indeed mistakenly incorporated into the release instruments. The unrefuted evidence discloses that this inclusion was occasioned by an error in transcription which culminated in the insertion of the improvident "all parties" phraseology in lieu of the "all parents" terminology which the drafting parties in fact intended to employ.[3] Transcript at pp. 2400–2401.

In view of the foregoing, including the attestations of the principals, the circumstances surrounding the settlement transactions generally, the factors underlying the parties' inclusion of the aforesaid indemnification provisions, and the parties' failure to faithfully reduce the terms of their agreement to writing, the Court is of the firm conviction that the settling parties did not in any way intend to release defendant CEI from liability stemming from the conduct comprising the conspiracy allegations advanced in the plaintiff's original Complaint. In light of the fact that the intent of the parties must, under the express mandate of Hazeltine, supra, be afforded controlling weight, the Court can only conclude that the releases in issue do not inure to the benefit of CEI.

Accordingly, the settlement transactions do not, in and of themselves, constitute a bar to the plaintiff's current attempts to predicate liability herein upon that conduct which was formerly the subject of the original conspiracy allegations. That is to say, the City may, within the parameters delineated below, continue to seek recompense for injuries sustained as a consequence of that allegedly unlawful conduct which purportedly served to deny plaintiff access to the benefits of coordinated operations and development.

In asserting and attempting to prove this denial of access charge, however, the plaintiff must remain cognizant of the fact that it has, independently of the aforesaid releases, expressly relinquished vis-a-vis CEI both its original Section 1 conspiracy claim, see Plaintiff's Motion For Leave To File Second Amended Complaint (June 9, 1980), and any "Section 2 claim based on conspiracy". Defendant's Exhibit R–13.[4]

---

fendants Toledo Edison and Ohio Edison the obligation to present the accord as a "fair basis upon which to settle all claims" to only the non-CEI defendants.

3. While the foregoing circumstances might support the invocation of this tribunal's equitable powers, enabling the Court to equitably reform the settlements to conform to the parties' actual intent, see H. Prang Trucking Co., Inc. v. Local Union No. 469, 613 F.2d 1235, 1239 (3d Cir. 1980), the City has not affirmatively sought relief in the nature of reformation.

It might appear, however, that the parties' failure to accurately reduce their agreement to writing is a factor which may be appropriately considered in the instant context in ascertaining the intent which, under Hazeltine, supra, is to be afforded legal effect.

4. Defendant's Exhibit R–13 is a letter dated June 18, 1980, from William B. Norris, Esq., lead counsel for the City, advising defense counsel that the plaintiff does "not intend to pursue a Section 2 claim based on conspiracy."

Accordingly, the City cannot, in pursuing its denial of access claim, properly hold CEI accountable in damages for conduct jointly undertaken by CEI and its former co-defendants, as such concerted activity would necessarily be part and parcel of the very conspiracy claims which the plaintiff has elected to abandon. Evidence offered then which merely reflects that CEI and others engaged in concerted conduct in furtherance of any efforts to deny plaintiff access to the benefits of coordinated operations and development would be subject to exclusion as irrelevant or, alternatively, unduly prejudicial. By way of contrast, the City may properly pursue the instant contention by adducing probative evidence which demonstrates that the injuries sustained as a consequence of the aforesaid denial of access proximately resulted from CEI's *unilateral* anticompetitive conduct. That is to say, the Court is of the opinion that the City is, in view of its express abandonment of all conspiracy claims, properly limited to adducing evidence of, and seeking damages for, that assertedly unlawful conduct unilaterally undertaken by the defendant CEI, and may not predicate liability herein upon conduct which CEI may have jointly undertaken in conjunction with one or more of its former co-defendants.

IT IS SO ORDERED.